O'Toole v Goodman (2019 NY Slip Op 02415)





O'Toole v Goodman


2019 NY Slip Op 02415


Decided on March 28, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 28, 2019

Friedman, J.P., Gische, Kapnick, Gesmer, Kern, JJ.


8489 301137/08

[*1]Marianne O'Toole, etc., et al., Plaintiffs-Appellants,
v
Elliot Goodman, MD, Defendant-Respondent, Holy Name Hospital, et al., Defendants.


The Law Office of Adam M. Stengel, P.C., New York (Adam Stengel of counsel), for appellants.
Aaronson Rappaport Feinstein & Deutsch, LLP, New York (Steven C. Mandell of counsel), for respondent.



Order, Supreme Court, Bronx County (Douglas E. McKeon, J.), entered on or about January 11, 2018, which, to the extent appealed from as limited by the briefs, granted defendant Elliot Goodman MD's motion for summary judgment dismissing all claims against him, unanimously affirmed, without costs.
Plaintiffs claim that defendant Goodman, a private attending bariatric surgeon with privileges at Holy Name Hospital in New Jersey who performed a gastric bypass on plaintiff Lee Green (patient), failed to timely resume the patient's Lexapro prescription while he was recovering from complications in the intensive care unit (ICU). The patient had a medical history of using Lexapro, a selective serotonin reuptake inhibitor, to manage his anxiety. As a result of this failure, plaintiffs allege that the patient, while in a medically induced coma, developed severe agitation caused by Lexapro withdrawal, which led to the use of wrist restraints, and, eventually, permanent bilateral wrist drop.
"[A]lthough physicians owe a general duty of care to their patients, that duty may be limited to those medical functions undertaken by the physician and relied upon by the patient" (Burtman v Brown, 97 AD3d 156, 161-162 [1st Dept 2012] [internal quotation marks omitted]). Under the particular circumstances in this case, defendant, as the patient's surgeon, did not owe patient a duty to manage his medication in the ICU. Rather, in this emergent setting, defendant properly relied on the ICU staff and other specialists to treat and manage the patient's non-surgical issues (see Perez v Edwards, 107 AD3d 565, 566 [1st Dept 2013], lv denied 22 NY3d 862 [2014] [holding that the defendant doctor "was entitled to rely on the treatment rendered to decedent in the hospital by specialists better equipped to handle decedent's condition"]; cf. Tierney v Girardi, 86 AD3d 447, 448 [1st Dept 2011] [finding that the defendant doctor "continued to owe a duty of care because he established a doctor-patient relationship with decedent, consulted with her, her family, and the cardiologist concerning her treatment following the cardiocatheterization, and continued to monitor her condition" even after another surgeon had performed a subsequent heart procedure]).
To reach any discussion about deviation from accepted medical practice, it is necessary [*2]first to establish the existence of a duty (see Burtman, 97 AD3d at 161). Thus, in light of our determination, we need not address the parties' remaining contentions.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MARCH 28, 2019
CLERK